ESTHER DICKINSON *vs.* INHABITANTS OF CONWAY.

A town treasurer without authority borrowed money on the credit of the town, and gave his note as treasurer. The town already owed two notes to the person from whom the money was borrowed. The treasurer afterwards paid a year's interest on the three notes, together with a small sum in arrear for interest on one of them; took a receipt therefor, which he placed among the papers of the town, and charged to the town the amount so paid by him, in one item, and in his annual report entered it simply as interest paid " on notes " to that person. In the same report he gave what purported to be a list of all the notes and debts due from the town, in which the note for the money so borrowed by him was not included, but the other two notes were included. The report was read at a town-meeting, and duly accepted by the town. The treasurer became a defaulter, and there was evidence tending to show that the selectmen, in examining his accounts, saw the receipt taken by him for the interest, wrote " passed " upon it, and settled with him by taking certain securities for such sums as might upon full examination be found to be due from him as treasurer to the town, and agreeing to pay to him the surplus realized from them, if any; but they had no knowledge of the note given by him for the borrowed money, and did not realize from the securities anything which was applied thereon. *Held,* that there was no evidence of a ratification of the note by the town, to be submitted to the jury.

CONTRACT, brought against the inhabitants of Conway to ecover the amount of a promissory note, dated April 10th 1862, and signed by G. Edgerton, town treasurer, promising " for my-self or successor in said office " to pay $1200 to the plaintiff or order.

At the trial in the superior court, before *Vose,* J., it appeared that Edgerton was town treasurer for several years prior to March 7th 1864, at which time Henry W. Billings was chosen as his successor. At the town-meeting held on that day, Edg-erton submitted his annual report as treasurer, which contained, as a part of the expenditures of the town, the following item : " May 14, 1863. To paid interest on notes to Mrs. E. Dickinson, $191.96." In the same report, and also in that of the preceding year, a statement was made which purported to be a list of all the notes and debts due from the town. The above note of $1200 was not mentioned in either report; but two other notes, one of $800 and another of $1000, were mentioned as due from the town to the plaintiff. The above report was duly accepted by the town. There was no discussion upon it, and no mention

was made of the $1200 note at the town-meeting. The note of $800 was given in 1857, and that of $1000 in 1860; and in the treasurer's report made in March 1863 there was an entry of a payment of "interest on notes to Mrs. E. Dickinson, $108." And in the treasurer's book, which contained the records of his reports, the following entry was found in Edgerton's hand-writing: "May 14, 1863, paid interest on three notes to Mrs. E. Dickinson, $191.96." And an indorsement of the payment of interest on the note in suit was made by Edgerton.

Billings was called as a witness, and produced from the files of the town the following receipt: " Received, Deerfield, May 14, 1863, from G. Edgerton, treasurer of the town of Conway, one hundred and eighty dollars for one year's interest on three notes that I hold against the town of Conway; also eleven $\frac{96}{100}$ dollars for interest on the same past due. Esther Dickinson." The word "passed" was written upon this receipt by Consider Arms, one of the selectmen of the town who examined the vouchers of the treasurer at the meeting of March 7, 1864. Arms testified that Edgerton read to them the entries on his books, and the selectmen examined the vouchers, and he wrote the word "passed" on those vouchers which corresponded with those entries; that it was a voucher to the treasurer of what appeared on his books; and that when he (Arms) wrote the word "passed" on this receipt, he had no knowledge of the existence of the note for $1200. Billings testified that this receipt was not produced in the town-meeting in March 1864, but that he found it on the files.

In 1863, 1862, and in one or more years before then, the selectmen settled with the treasurer. It did not appear that they settled with him in 1864, as in other years, but a certificate of settlement was prepared in the treasurer's book, which they did not sign. But the plaintiff put in evidence the following paper, signed by two of the three selectmen:

" Settled this day with Gurdon Edgerton, treasurer of the town of Conway up to this date, by receipt of certain promis-sory notes secured by mortgage on real and personal property and by assignment of claim for money advanced for the purpose

of procuring recruits ; all errors and omissions, if any, excepted. And if the said town realizes more from said notes, securities and assignment than shall upon full examination be found to be due from said Edgerton as treasurer to said town, including costs and expenses, the balance shall be repaid to said Edgerton. Conway, March 15, 1864. Carlos Batchelder, W. C. Campbell, selectmen of Conway."

The plaintiff also put in evidence a paper without date, in the handwriting of Billings, purporting to give a statement of the account of Edgerton with the town, and including the note of $1200 now in suit, with certain others, as notes outstanding, given by him, without crediting the town for the money received thereon.

In relation to the said alleged settlement, the plaintiff introduced evidence tending to show that on the 15th of March 1864 the town, by their selectmen, took security from Edgerton, by the indorsement of notes secured by mortgage, for moneys of the town appropriated by him to his own use, and to secure the note of $1200, and other notes. And it appeared that Edgerton and his partner went into insolvency in June 1864, and one of the selectmen testified that claims which were turned out to them on the 15th of March were proved in insolvency, on behalf of the town, and dividends to the amount of over $10,000 received thereon.

The defendants, on the other hand, introduced evidence tending to show that the selectmen had no knowledge of the note in suit, or of the statement of Billings referring to it, on the 15th of March, or until some time in April; that after the alleged settlement on the 15th of March more notes given by Edgerton in the name of the town came to their knowledge; that a town-meeting was called in April, and a committee was appointed to act with the selectmen in the matter, and the settlement was never carried into effect, but some of the securities were discharged after the commencement of the proceedings in insolvency; and Billings testified that no final settlement had yet been had with Edgerton, who still owed the town about $281.

No vote of the town was proved, authorizing Edgerton to borrow money and give notes in behalf of the town.

On the above evidence, the judge submitted the question whether on the 15th of March 1864 the selectmen had actual knowledge of the existence of the note in suit to the jury, who found that they had not; and the judge thereupon directed a verdict for the defendants.

The plaintiff alleged exceptions.

*D. Aiken & C. Delano*, for the plaintiff. The vote of the town, accepting Edgerton's report, was evidence to go to the jury on the question of ratification. Paying interest, and passing accounts relating thereto, by a corporation, are a ratification. *Episcopal Charitable Soc.* v. *Episcopal Church in Dedham*, 1 Pick. 372. *Hayward* v. *Pilgrim Society*, 21 Pick. 270. *Thayer* v. *Boston*, 19 Pick. 511. It was evidence which, if unexplained, would authorize the jury to find a ratification. In reply to this, the defendants answered that the vote was by mistake, inadvertence, heedlessness or ignorance. This involves the question, by whose negligence did it happen? And this was a question for the jury. If there was any evidence to go to the jury, it was not competent for the court to withdraw the case from them. It is immaterial whether or not the selectmen knew of this particular note. The town had evidence independently of the selectmen. The town were informed in open town-meeting that the interest paid that year to the plaintiff amounted to $191.96, showing a debt of $3000, at least; while the interest paid the year before was only $108, showing a debt of only $1800.

The town also ratified this note by taking the securities turned out to the selectmen, and retaining them and availing themselves of them after they had knowledge of the note in suit. It was at least a question for the jury to pass upon, whether or not security was taken for this note, and surrendered after full knowledge of its existence.

*C. Allen & S. O. Lamb*, for the defendants, cited *Benoit* v. *Conway*, 10 Allen, 528; *Lowell Five Cents Savings Bank* v. *Winchester*, 8 Allen, 109; *Haven* v. *Lowell*, 5 Met. 35; *Greenfield*

*Bank* v. *Crafts*, 4 Allen, 447; *Owings* v. *Hull*, 9 Pet. 629; *Nixon* v. *Palmer*, 4 Selden, 398; 2 Greenl. Ev. § 66; Story on Agency, § 243.

BIGELOW, C. J.    We cannot see that the plaintiff has any valid ground of exception to the ruling of the court directing a verdict for the defendants.    The note in suit, not having been given in pursuance of any vote or antecedent authority of the town, could not be held, to be a binding contract on which to charge the defendants, unless it had been directly or by implication ratified and adopted by them.    It is equally clear that any ratification of an unauthorized contract, in order to be effectual and obligatory, must be shown to have been made with a full knowledge of all essential facts connected with the transaction to which it relates; especially it must appear that the existence of the contract and its nature and consideration were known to the party who is alleged to have become liable upon it by virtue of a subsequent adoption or assent.

On looking at the evidence stated in the bill of exceptions, we fail to discover any facts which would have warranted a jury in finding a verdict for the plaintiff on the ground that the note had been ratified by the defendants prior to the alleged settle-ment with their defaulting treasurer on the fifteenth day of March 1864.    The vote of the town accepting the report of the treasurer, passed on the seventh day of March in that year, falls short of showing a ratification.    The note declared on was not enumerated among the debts due from the town.    Other notes for which the town was liable were specified in the report; among them two notes due to the plaintiff.    The item in the treasurer's account, of interest paid to the plaintiff, may well have been supposed to refer to these notes.    Certainly it did not show that the town thereby had notice of the existence of a note of which they had no previous knowledge.    Nor did the exist-ence of a receipt for the amount of interest mentioned in the treasurer's report tend in any degree to strengthen the plaintiff's case.    Knowledge of this receipt was not brought home to the defendants.    No statement was made in the meeting of the town that any such receipt had been given.    The evidence

which tended to show that the selectmen had notice of it was wholly immaterial. They had no power or authority to ratify the note in suit, nor did it appear that they intended to do so. The only legitimate inference from this evidence was, that the receipt was received by the selectmen as a voucher for the payment of money by the treasurer in behalf of the town. But the document itself did not specify the note in controversy, and the jury by their verdict have found that the selectmen in " passing" the receipt did not thereby gain knowledge that such a note was due from the town.

It is urged on the part of the plaintiff that the amount of interest paid to the plaintiff and charged in the treasurer's account disclosed an indebtment to her of more than three thousand dollars, which could be made up only by including the note in controversy. But the answer to this suggestion is, that it did not appear that it was made known to the town that the amount paid was for interest which had accrued during the previous year only. It was well known that the plaintiff was a creditor of the town, and it may well have been inferred by those present at the meeting that money had been paid to her for interest in arrear for a period longer than a year, or in advance on discount of the old notes for a renewal of the loan.

So far as the settlement with the treasurer of March 15th 1864, and the taking of security from him for a supposed balance, were evidence of a ratification, it seems to have been rendered wholly immaterial by the special finding of the jury. As it is now to be taken as a fact that the agents of the town in making this settlement had no knowledge of the existence of the note declared on, the alleged ratification falls to the ground because it was made in ignorance of an essential fact.

*Exceptions overruled.*